JACKSON NATIONAL BANK OF JACKSON v. SAM CHRISTENSEN.

COUNTY OF JACKSON AND OTHERS, GARNISHEES.

THE NATIONAL CLAY WORKS OF MASON CITY, IOWA, INTERVENER-APPELLANT.[1]

July 9, 1920.

No. 21,843.

**Garnishment — assignment of fund by defendant not proved.**
1. The evidence does not compel the court to find that defendant assigned to intervener, or to the one to whose rights intervener claims to be subrogated, the fund or debt reached by the garnishment.

**Assignments of error.**
2. Other assignments of error are without merit.

Action in the district court for Jackson county. The National Clay Works of Mason City, Iowa, filed its complaint in intervention to recover $8,198.32 against defendant and against the county of Jackson and the auditor thereof the sum of $4,186.82. The case was tried before Dean, J., who made findings and as conclusions of law found that Jackson county and its auditor were liable as garnishees to plaintiff in the sum of $1,676.74 with interest. From the judgment entered pursuant to the order for judgment, intervener appealed. Affirmed.

*F. B. Faber* and *Dunn, Bryant & Clough,* for appellant.
*E. H. Nicholas,* for respondent.

[1] Reported in 178 N. W. 494.

Holt, J.

On December 29, 1917, plaintiff garnisheed the county of Jackson, and it disclosed $4,186.82 in the hands of the county auditor, then due defendant upon a drainage contract. Defendant did not answer in the main action, and judgment was entered therein in favor of plaintiff for $1,676.74. Later the National Clay Works of Mason City, Iowa, a corporation, filed its complaint of intervention in the garnishee proceeding, alleging that, on the day previous to the garnishment, defendant had assigned $3,069.46 of the debt to Hiram Rue and the balance to intervener, and that subsequently it had been compelled to pay Rue and had become subrogated to his rights, so that the whole debt impounded by the garnishment was owned by intervener when the garnishment summons was served, and judgment was asked accordingly. Issue was joined and the action tried to the court, who found "that the claim and contention on the part of the intervener is without merit, and that said intervener has no lawful claim in or to the said sum of money in the hands of the said county auditor, or any part thereof." Judgment was entered for plaintiff against the county for $1,706.93, and that intervener take nothing, but that plaintiff recover of intervener $22.79 costs. Intervener appeals from the judgment. There was no motion for a new trial.

The only claim made by intervener to the fund or debt due defendant from the county was in virtue of an alleged oral assignment of the same by defendant to Rue and intervener on the day previous to the garnishment. The finding above recited negatived this claim. Unless the evidence demands a finding that the debt was so assigned and transferred on December 28, plaintiff's garnishment seized it on December 29, and the judgment is right. Defendant signed no order or other writing evidencing a transfer of the debt. But an oral assignment is as effective as a written, provided the proof is satisfactory that there was a present transfer of the debt in good faith and for a valuable consideration. Hurley v. Bendel, 67 Minn. 41, 69 N. W. 477. We may concede that a valuable consideration here existed, and the concession may apply also to the good faith of the parties. Nevertheless, we are convinced that there was not such a clear proof of a present intention, or any intention on the part of the defendant to transfer to Rue and intervener the

debt due him from the county, that the court was required to so find.

All that was done on the occasion was this: One Winter, representing intervener, Rue, defendant, and the county auditor, were in the latter's office in the afternoon of December 28. The auditor informed them what amount was due'defendant on the drainage contract. Intervener had an account of over $5,000 against defendant for tile furnished in the work. Rue held by assignment from persons who had worked on the ditch claims aggregating $900. He was also cashier of a bank at Lakefield that had loaned defendant money to pay for labor and material in the construction of the ditch. Defendant had given the bank four promissory notes totaling $2,125 for the money so loaned. These notes Rue had with him in the auditor's office. Intervener, in order to sell its tile to defendant, aided him to obtain the contract from the county by depositing its certified check with the auditor to guarantee the bid and by procuring bondsmen for him and guaranteeing them against loss. Having gone that far, it also, at the auditor's request, deposited additional certified checks to promote the work. In some way one of these checks for $2,500 had come into the hands of the Lakefield bank as security for the four notes mentioned. Rue also had this check with him when the purported assignment was made. He and intervener figured up their respective claims in the presence of the auditor and defendant. The latter was indifferent, and took little or no part in what was going on, since, evidently, the ditch had been constructed at a loss. The auditor testified that it was understood that he should issue a warrant to Rue for $3,069.- 46, and upon receipt of that Rue was to return to the auditor the $2,500 certified check above mentioned for delivery to intervener, and for the balance of $1,117.36 intervener was to receive a warrant. No warrants were issued on that day, nor were the notes delivered to defendant or the certified check to either the auditor or intervener. Before anything further was done the garnishee summons was served.

The auditor, while testifying to his conclusion as to the understanding as above stated, when asked this question: "But so far as Christensen was concerned, he didn't state in words that this money should be paid to the Clay Works or to Hiram Rue or to anybody else, did he?" Answered: "No, I have answered that once to that effect."

Rue was not a witness.

Winter, intervener's representative, testified that there was no conversation between Rue and Christensen relative to the payment of the four notes above mentioned, and further that the witness had made out a list of what disposition was to be made of the money and went over it with the auditor, Christensen being present, and that he, Winter, directed the auditor how and to whom it should be paid out; that the auditor, turned to Christensen and asked if that was the way he wanted it, and Winter testified his recollection was that "Sam said yes. Mr. Christensen don't talk very much." Further in his testimony these questions and answers occurred: "Now, Mr. Winter, what was said by Mr. Christensen himself, if anything, relative to the method of paying these claims" (the $900 claims held by Rue) ? "I don't think he said anything."

The defendant, Christensen, testified that he never told the auditor to pay any money to either Rue or intervener, but finally on cross-examination admitted that he understood that out of the money that was claimed by him in the county auditor's hands Mr. Rue was to be paid, and that Winter asked him to let the balance of $1,100 go to intervener to which he answered: "I guess so."

We think this evidence as outlined, while it might have supported a finding that defendant assigned the debt, does not compel such a finding. It is true, that no set words need be used by the assignor. A mutual assent between the assignor and assignee that the latter instead of the former is to receive the money from the debtor, would warrant a finding of a present transfer. But here the testimony is vacillating and uncertain as to what Christensen said and did. Whether it amounted to more than the mere appointment of the auditor as his agent to disburse the fund was for the trial court's determination. If not, no title to the fund or debt passed, and the agency could be revoked at any time prior to payment. In Christmas v. Russell, 81 U. S. 69, 20 L. ed. 762, Justice Swayne says:

"An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material, provided the intent to transfer is manifested. Such an intent and its

execution are indispensable. The assignor must not retain any control over the fund—any power to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such a character that the fund holder can safely pay, and is compellable to do so, though forbidden by the assignor." Commercial Nat. Bank v. Portland, 37 Ore. 33, 54 Pac. 814, 60 Pac. 563.

As indicative of the absence of an intent to effect a present transfer, it may be noted that although Rue had both the notes and the certified check with him, the notes were not returned to defendant, nor was the check permanently given to intervener. Had there been a completed transaction Rue naturally would have done so. Nor is there any evidence that intervener, then or at any time, credited defendant's account with any sum on account of the purported assignment.

The court's finding to the effect that there was no assignment of the debt being sustained, there is no occasion to consider the question of intervener's subrogation to Rue's rights to the fund because of it being compelled to pay the certified check, for he did not acquire any therein.

The point is not well taken that because the disclosure revealed that intervener claims the fund disclosed, no judgment could be entered against the garnishee. The claim was litigated at the instance of intervener and found to be without merit. Both garnishee and intervener are bound by the result.

If any clerical defects exist in the judgment as entered, the remedy is in the court below, but, granting their existence, we fail to see how the defects or irregularities complained of can possibly prejudice intervener.

The judgment is affirmed.