**SPRINGER v. J. R. CLARK CO.**

No. 269 Civil.

District Court, D. Minnesota, Fourth Division.

July 6, 1942.

Benedict Deinard, of Leonard, Street & Deinard, of Minneapolis, Minn., for plaintiff.

Clark Fletcher and Henry Halladay, of Fletcher, Dorsey, Barker, Colman & Barber, both of Minneapolis, Minn., for defendant.

JOYCE, District Judge.

A pre-trial conference was the subject of the court's order filed herein on September 30, 1941. The facts therein appearing were agreed upon between respective counsel. They are too voluminous to be incorporated in this memorandum. However, by reference they are made a part hereof and the following short facts are set forth to afford at this time a clear picture of the controversy.

Aaron M. Springer was plaintiff's husband and the inventor of an ironing board device later patented. He assigned his rights in and to such device and under such patent to Oregon Woodenware Manufacturing Company, reserving to himself a royalty which he later assigned to the plaintiff. Thereafter the Oregon Company assigned its rights to an Illinois Corporation known as Rid-Jid Products Company, which licensed the defendant herein to manufacture and sell the patented device. Various agreements were made between the Illinois corporation and the defendant. The one of controlling importance in this proceeding is a contract dated June 1, 1931, entered into between the defendant and Rid-Jid Products, Inc., a Delaware corporation, which had succeeded to all of the business, property, assets and rights including the patent in question, of Rid-Jid Company of Illinois. The agreements between the Illinois corporation and the defendant included a license with certain mutual rights granted by the defendant to Rid-Jid of Illinois and by the latter to the defendant, as well as a mortgage of the interest of Rid-Jid of Illinois in the patent in question to the defendant and with further license agreements for different considerations.

Beginning in May, 1922, Rid-Jid of Illinois in letters to the defendant authorized the latter to pay a sum equal to 24¢ per dozen of the patented articles manufactured

and sold by defendant direct to Aaron M. Springer and Rebecca G. Springer, his wife. This was the first knowledge that the defendant had of any claim on the part of either plaintiff or her husband relating in any way to the patents involved. Defendant continued to comply with the authorization of May, 1922, until March 1, 1924, at which time it received a further communication from Rid-Jid of Illinois, authorizing defendant to mail the royalties of 24¢ per dozen to Aaron M. Springer alone. After Mr. Springer's death, and at the request of Mrs. Springer, such royalty payments were made direct to her as successor and heir of her husband. Each such royalty payment was accompanied by a statement showing the basis therefor and that the payments were made for the account of Rid-Jid of Illinois, and after 1931 that such payments were made for the account of Rid-Jid of Delaware. The evidence shows that both Rid-Jid Companies treated defendant's responsibility as running to them. All directions or authorizations which were made by either of the Rid-Jid Companies showed them as retaining the right to cancel, modify or revoke instructions, authorizations or directions to the defendant, with respect to what disposition defendant would make of royalties coming due under the license agreement which the defendant had from time to time with either of such companies.

Plaintiff now claims to be entitled to a 2¢ royalty upon each ironing board embodying the features of the Springer patents manufactured and sold by the defendant from November 15, 1934, to November 16, 1937, and from November 16, 1937, to March 1, 1938, and asserts that the defendant is liable to her upon any one or all of three different theories: (1) That the patents were encumbered with a special tenure or equitable charge to secure plaintiff's royalties, and that since defendant worked the patents with knowledge of the charge it became liable to plaintiff; (2) that there was an equitable assignment of the royalties to the plaintiff; (3) that defendant became liable by novation.

Defendant denies that it is liable upon any or all of these theories, and asserts that any rights which plaintiff may have arise by way of subrogation to the rights of Rid-Jid (Del.), to which it has good affirmative defenses.

Considering plaintiff's contentions in the foregoing order:

(1) Plaintiff's claim of liability for royalties in absence of assignment or substitution:

As I understand plaintiff's argument, she contends that by reason of the agreement between her husband Aaron M. Springer and Oregon Woodenware Manufacturing Company a special tenure or equitable charge upon the patents was created, and that this special tenure or equitable charge followed the patent so as to charge whoever used or received the benefits of the patent with knowledge thereof with liability for the royalties due the inventor, or his assignee. Plaintiff cites a great many cases in this section of her briefs as authority to support this proposition, but I am unable to agree with plaintiff's view as to the holding of such cases or their applicability to the facts in this case. Plaintiff apparently relies chiefly upon a group of cases holding, in substance, that the owner of a patent is entitled to recover royalties from a subsequent assignee of an assignee or licensee. See In re Michigan Motor Specialties Co., D.C.Mich.1923, 288 F. 377; In re Norcor Mfg. Co., 7 Cir., 1940, 109 F.2d 407; Havana Press Drill Co. v. Ashurst, 148 Ill. 115, 35 N.E. 873; Paper Stock Disinfecting Co. v. Boston Disinfecting Co., 147 Mass. 318, 17 N.E. 554; Goodyear v. Congress Rubber Co., 10 Fed. Cas. page 674, No. 5,565, 3 Blatchf. 449; Werderman v. Societe Generale, [1881] L.R. 19 Ch.Div. 246; In re Waterson, Berlin & Snyder Co., 2 Cir., 1931, 48 F.2d 704, 17 A.B.R.,N.S., 716. These decisions, however, are based upon the theory that the owner of a patent is entitled to compensation for the unauthorized or tortious use of his property. It should be noted that in all of these cases there was an actual assignment of the patent or license and the assignee was claiming the right to work the patents for his own benefit without assuming the obligation to pay royalties. In the Michigan Motor case and in the Norcor case the court implied a contract to pay royalties, and in the Havana Press Drill case, the Paper Stock case, and the Werderman case the court found or implied privity of contract to prevent the unjust enrichment of the assignee. There are significant differences between the situation in those cases and the case at bar. The defendant is not using plaintiff's property for his own benefit, but rather is using the property of Rid-Jid. Plaintiff is not the owner of the patent, nor the inventor, but the assignee of the inventor, or the bene-

ficiary of the reservation of royalties provision in the contract between the inventor and Oregon. Springer assigned the application for the patents to Oregon before the patents were issued and therefore never became the owner of the patent. It should be noted that plaintiff is not here claiming that the defendant is an assignee, but rather is claiming to be entitled to recover in the absence of an assignment or assumption.

Plaintiff asserts that whether defendant is an assignee or a licensee is a purely academic question. The rights conferred by a patent upon the owner are the exclusive right to manufacture, sell and use the subject matter of the patent. It is conceded by plaintiff that defendant has the exclusive right to manufacture and sell the subject matter of the patent by reason of its agreement with Rid-Jid. Plaintiff contends that even though defendant may not have the right to use the subject matter of the patent that is immaterial since defendant would have no occasion to use it, and that therefore defendant has the entire beneficial use of the patent and should be treated the same as if it were an assignee.

In the absence of some rule of law or precedent to that effect, the mere fact that the defendant does not have the occasion or the reason to want to use the subject matter of the patent, or that the subject matter of the patent is not of such a nature as is readily adapted to commercial exploitation, should not operate to confer upon the defendant the status of an assignee. To hold otherwise would be to hold that the status of an assignee or a licensee must be determined from the use made of the subject of the patent rather than the rights granted by the agreement between the parties. This would make the status of every assignee or licensee a question of fact in every individual case, and it is apparent that endless confusion would be caused thereby. The agreement between Rid-Jid and this defendant does not purport to grant the right to use the subject matter of the patent to defendant, and therefore defendant should not be considered or treated as an assignee of the patent.

This case also differs from the situation where a receiver (In re Norcor Mfg. Co., supra), or a trustee in bankruptcy (In re Michigan Motor Specialties Co., supra), works the patents, or where a trustee in bankruptcy sells the patent or copyright (In re Waterson, Berlin & Snyder, supra) for the benefit of the bankrupt estate. In those cases the estate, which was under a contractual obligation to pay royalties, would be benefitted if the patent or copyright were not sold subject to the contractual obligation to pay royalties, or the trustee in bankruptcy or receiver required to pay royalties on the patents worked. A bankruptcy court is a court of equity and has the power to prevent the unjust enrichment of the bankruptcy estate at the expense of the inventor or composer.

In the absence of an assignment of the patent to the defendant, I am of the opinion that the court would not be justified in implying a contract or in finding or implying privity of contract for the benefit of the plaintiff under the facts of this case.

(2) Plaintiff's claim of equitable assignment:

Plaintiff asserts that she became equitable assignee of a portion of the royalties due Rid-Jid (Del.) from the defendant by virtue of certain letters written by Rid-Jid to defendant authorizing payment of 24¢ per dozen of the royalties reserved by Rid-Jid. The first of these is Exhibit "J", dated May 15, 1922. This letter states: "You have been authorized * * * to pay Aaron M. Springer and Rebecca Springer, his wife, a royalty of two cents (2¢) per board on each and every Rid-Jid or Springer ironing board sold by your company, which sum shall be deducted from the amount of royalty due our company under its contract with you. Receipts evidencing the amount of royalties paid should be taken from the Springers. This communication is your authority for making the payments as above set forth."

The second is a letter dated March 1, 1924, Exhibit "P", which states: "On and after this date, you will please mail Royalties of $.24 per dozen to Aaron M. Springer direct on all Rid Jid and Springer Ironing Tables, as per our contract with you, and mail the balance of $1.75 per dozen to the Rid-Jid Products Corporation, 1309 Kesner Building, Chicago, Ill. This cancels all previous instructions to you covering payment and distribution of Royalties."

In Exhibit "I", which is the contract of June 1, 1931, page 6, paragraph 9, states: "Hitherto, under the instructions

from Rid Jid Products, Clark Company have paid directly to Rebecca Springer part of the accruing royalties to the extent of Twenty-Four (24¢) per dozen boards, and Clark Company is hereby authorized to make such payments, under the present contract, until otherwise instructed by Rid-Jid Products."

There is no dispute as to the fact that from May 15, 1922, to March 1, 1924, defendant paid the royalties to Aaron and Rebecca Springer, and that from March 1, 1924 until about March 21, 1929, when Aaron Springer died, the royalties were paid to Aaron Springer or to Aaron and Rebecca Springer jointly, and that subsequent to March 21, 1929, royalty checks were issued direct to Rebecca Springer in accordance with the request of her attorney. See page 7, Order on Pre-trial conference.

The principle of law is clear that while no particular form of words or of instrument is required to render an assignment valid, an intent to transfer must be manifested and the assignor must not retain any control over the fund or any power of revocation. Farmers' Bank v. Hayes, 6 Cir., 1932, 58 F.2d 34; Farmers' Bank v. Blount, 4 Cir., 1924, 8 F.2d 443; Christmas v. Russell, 1871, 14 Wall. 69, 20 L.Ed. 762; 6 C.J.S., Assignments, § 58(b), p. 1104; 6 C.J.S., Assignments, § 59, p. 1107; Jackson National Bank v. Christensen, 1920, 146 Minn. 303, 178 N.W. 494.

The only evidence bearing upon the intent to transfer, the retention of control, or the power of revocation is to be found in the letters and agreements between Rid-Jid and defendant. Plaintiff argues that these show the intent to transfer and that Rid-Jid retained no control or power of revocation. With reference to the contract of 1931, plaintiff contends that the words "until otherwise instructed by Rid Jid products" have reference to a period of time covered by the license contract when Mrs. Springer would not be entitled to royalties.

It is my view upon a reading of all the letters and agreements that Rid-Jid did not manifest any intent to assign or transfer to plaintiff a royalty of 2¢ per board, but rather that Rid-Jid merely used this as a means of facilitating payment of its obligation. The use of the terms "authorized" and "instructions" indicates that Rid-Jid did not regard itself as having relinquished control over the royalties. The sentence in the letter dated March 1, 1924: "This canels (cancels) all previous instructions", and in the contract of June 1, 1931: "Hitherto, under the instructions from Rid-Jid Products, Clark Company have paid directly to Rebecca Springer * * *", and "* * * until otherwise instructed by Rid-Jid Products", clearly indicate that the instructions were revocable and that the parties so considered them. Plaintiff's contention that the right of revocation was intended to be applicable only after the termination of Mrs. Springer's rights is untenable. If the parties had wanted to so determine, they could easily have done so in apt language.

It should also be noted that the payment direct to Mrs. Springer alone came as a result of a request by her attorney and not by a direction or order of the Rid-Jid Company.

It should be further pointed out that at the time the 1922 and 1924 letters were written defendant was working the patent under a license which expired in 1931, and that therefore even if those letters were construed to be effective as an assignment, they could not create an assignment of a contract which was not yet in existence or even contemplated. See Annotation, 1938, 116 A.L.R. 955. As to the period subsequent to 1931, plaintiff must rely upon the provisions of the contract and the fact that defendant paid plaintiff money until 1934. Since paragraph 9 of that contract must be construed as granting revocable authority to pay plaintiff, it is my view that plaintiff cannot succeed upon the theory of an equitable assignment.

(3) Plaintiff's claim of novation:

Concluding as I do that no equitable assignment existed, it follows that there is no basis for concluding that a novation existed. The plaintiff does not claim that there was any express promise on the part of the defendant to pay the two cent royalty. Any acceptance or acknowledgment by the defendant of liability for this royalty must be inferred from its actions. The only thing the defendant did was to issue plaintiff a check each month and send it to her together with a voucher containing the statement: "For account of Rid-Jid Products Corp." and a computation of the amount on the basis of those shipped and billed. No accounting was ever made to plaintiff on the basis of the boards manufactured by the defendant, as

was provided in the contract between Springer and Oregon Company. This action of defendant was entirely consistent with the theory that it was thereby discharging its liability to Rid-Jid and was not assuming or acknowledging a liability to plaintiff for royalties.

In short, I am of the view that the plaintiff has not established that defendant is directly liable to her by virtue of a special tenure or equitable charge attaching to the patent which defendant worked; that there was no equitable assignment from Rid-Jid to plaintiff; and that there was no novation between plaintiff and defendant.

For the reasons stated it is ordered and adjudged that the complaint herein be dismissed and defendant have judgment against plaintiff for its costs and disbursements. Findings of fact and conclusions of law in support hereof will be later filed; to all of which the plaintiff is accorded an exception.