In re Arthur R. WAGNER and Sherry L. Wagner, Debtors.

Arthur R. WAGNER, Plaintiff,

v.

FARMERS COOPERATIVE ELEVATOR COMPANY, Defendant.

No. C92–3078.

United States District Court. N.D. Iowa, Central Division.

Aug. 31, 1994.

As Amended Oct. 4, 1994.

G.A. Cady, Hampton, IA, for plaintiff Arthur R. Wagner.

Lynn J. Wiese, Iowa Falls, IA, for defendant Farmers Co–Op. Elevator Co.

## ORDER

DONALD E. O'BRIEN, Senior District Judge.

The Court has before it Plaintiff/Debtor's appeal from the Bankruptcy Court's denial of his unlawful preferential payment claim. A hearing was held in this matter on May 6, 1994 in Fort Dodge, Iowa at which the Court heard both parties' oral arguments. After careful consideration of the facts involved, it is the ruling of this court that the Plaintiff's appeal is denied.

### I. FACTS

Plaintiff Wagner is a Chapter 11 Debtor who is seeking to recover $362,500 [1] which he paid to the Defendant, Farmers Cooperative Elevator Company (hereinafter, Defendant Co–Op). Plaintiff maintains that he unlawfully gave preferential treatment to the Defendant within 90 days of his filing for bankruptcy, in violation of 11 U.S.C. Section 547(b)(4)(A).

This case arises out of facts generated in a state court civil suit brought in October, 1985 by the now-Defendant Co–Op against the current Plaintiff. In that case, the Defendant Co–Op claimed that Plaintiff owed $261,338.81 plus interest on an open account for the purchase of feed for Plaintiff's cattle. A portion of that feed was wet corn gluten, which had been manufactured and sold by Archer Daniels Midland Company (ADM) and ADM Feed Corporation (ADM Feeds). Plaintiff, counterclaimed against the Defendant Co–Op and brought a third party claim against ADM and ADM Feed Corporation, claiming that the wet corn gluten was defective. In that same litigation, the Defendant Co–Op cross-claimed against ADM and ADM Feed Corporation.

In April, 1988, the case proceeded to a trial by jury. During the trial, Plaintiff apparently anticipated a favorable jury verdict against ADM and ADM Feeds. It accordingly entered into a Settlement Agreement (Defen-

---

1. The amount was for $350,000 plus interest. Therefore, throughout this Order the amount will be referred to as $350,000, though the actual amount paid was $12,500 more than that.

dant's Exh. A) with the Defendant Co–Op whereby the Defendant Co–Op agreed to reduce the Plaintiff's open account debt to $350,000 and the Plaintiff agreed (in anticipation of having available cash from a favorable jury award) to pay that amount[2]. By the time the case was received by the jury, the only remaining defendants were ADM and ADM Feeds on a product liability theory. The jury eventually found in Plaintiff's favor against those two companies and awarded damages in excess of $1 million.

On April 15, 1988, the state court entered judgments in favor of current Plaintiff Wagner and the Defendant Co–Op against ADM and ADM Feeds. Three days later, Plaintiff signed an offer to confess judgment in favor of the Co–Op. That offer to confess, along with Defendants' acceptance of the offer, was filed on April 29, 1988. On April 30, 1988, the Defendant Co–Op reduced Plaintiff's account balance to zero.

ADM and ADM Feeds appealed the district court's judgment to the Iowa Supreme Court. During the pendency of that appeal, ADM and ADM Feeds settled with Plaintiff in a manner which was also satisfactory to the Defendant Co–Op. Three checks totalling $1,012,500 were issued by ADM's and ADM Feeds's insurers (or the insurers' successors). A check for $350,000 was paid to Plaintiff's attorney, Randy Duncan (Duncan) and the other two checks, one for $512,500 and the other for $150,000, were written to the Plaintiff and the Defendant jointly. All three checks were deposited into Attorney Duncan's trust account.

Plaintiff apparently construed the Settlement Agreement as mandating that he pay $350,000 to Defendant, whether or not he recovered from ADM and ADM Feeds. After Plaintiff had settled with ADM and ADM Feeds, Defendant asked its attorney to structure the disbursement of the $350,000 in such a way that it would not pass through Plaintiff's hands, lest other creditors might intercept the money. Included in the Settlement Agreement was a stipulation that all moneys would be deposited in Duncan's trust account. Defendant's attorney endorsed the checks which were joint but refused to sign a release until it received its money. On November 27, 1989, the exchange was made. Plaintiff filed for bankruptcy on February 23, 1990.

Both parties agree—as Bankruptcy Judge Edmonds found—that the tolling of the 90–day proscribed preferential treatment clock began on November 25, 1989. The Defendant maintains that the payments it received from the Plaintiff were neither preferential nor within the proscribed 90–day period. Bankruptcy Court Judge William Edmonds filed two rulings in this case. On September 13, 1991, Judge Edmonds issued his first ruling, which denied Plaintiff's claim on the basis that the payments had been made outside of the 90–day pre-bankruptcy period. 144 B.R. 430. Judge Edmonds based his decision not on the date of the actual exchange (November 23, 1989), but on the date when the Settlement Agreement was actually entered into.

Plaintiff resisted that ruling[3]. In post-trial motions, Plaintiff argued that by focusing his determination on the timing element, alone, Judge Edmonds did not give the parties a chance to address the issue of whether the Settlement Agreement constituted a preferential transfer of money. In response to the Plaintiff's post-trial motions, Judge Edmonds re-opened the trial and accepted

---

2. By agreement of the parties, that Settlement Agreement was never filed with the state district court.

3. Although the Plaintiff resisted that ruling in post-trial motions to the Bankruptcy Court, he did not raise the issue of the 90–day limitation period in his Appeal to this Court. Instead, in a pleading entitled "Statement of the Issues Presented for Review and Designation of the Record," (attached as part of Clerk's Memorandum of Papers # 1), he made the following statement:

COMES NOW, Plaintiff, Arthur R. Wagner, by and through his Attorney, G.A. Cady III, and pursuant to Bankruptcy Rule 8006 hereby states the following issue to be presented for review: THAT THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT DEFENDANT'S EXHIBIT "A" CONSTITUTED AN EQUITABLE ASSIGNMENT.

The issue of whether the bankruptcy court correctly ruled that the transfer of funds occurred within 90 days of Plaintiff's bankruptcy filing is not before the Court and therefore the Court will not rule on that issue.

briefs on the issue of the Settlement Agreement. He then issued a second Order, again finding against the Plaintiff, this time on the basis that the Settlement Agreement constituted a lawful assignment for value and that the payment from the Plaintiff to the Defendants was therefore not unlawful.

## II. DISCUSSION

■ Bankruptcy Rule 8013 speaks to the disposition of appeals and the weight to be given a Bankruptcy Judge's factual findings. Rule 8013 provides:

> On an appeal, the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard should be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

A district court must affirm the fact findings of the bankruptcy court unless the bankruptcy court's findings are "clearly erroneous." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 55–56, n. 5, 102 S.Ct. 2858, 2863, n. 5, 73 L.Ed.2d 598 (1981). A finding is "clearly erroneous" if, on the entire record, the district court is left with a definite and firm conviction that a mistake has been made. *In re Perimeter Park Inv. Assoc.*, 616 F.2d 150, 151 (5th Cir.1980) (a bankruptcy case relying on *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Of course, conclusions of law are subject to *de novo* review. *In re Comer*, 723 F.2d 737, 739 (9th Cir.1984).

### a. Whether the Agreement was an Assignment

■ The question in this appeal is whether the Settlement Agreement between Plaintiff and Defendant was an equitable assignment of some portion of Plaintiff's right to any judgment or recovery obtained from ADM and ADM Feeds (and therefore not a violation of the unlawful preference rule). Plaintiff argued to Judge Edmonds that one cannot assign either tort claims or claims for punitive damages. Judge Edmonds ruled that individuals can always assign rights to an existing judgment *Broyles v. Iowa Dep't of Soc. Serv.*, 305 N.W.2d 718, 721 (Iowa 1981) or to any judgment which may be recovered in a pending action. *Id.*

■ Judge Edmonds noted that in Iowa, the inclusion of the term "assignment" in an agreement is not necessary to demonstrate that an assignment was intended. To the contrary, "(A)ny words or transaction which show an intention on one side to assign and an intention on the other to receive, if there is valuable consideration, will operate as an effective equitable assignment." *Fischer v. Klink*, 234 Iowa 884, 14 N.W.2d 695, 698 (1944). However, an agreement to pay out of a non-existent future fund is not sufficient to constitute an equitable assignment. *In re Donaldson's Estate*, 126 Iowa 174, 101 N.W. 870, 871 (1904); *State Central Sav. Bank v. Hemmy*, 77 F.2d 458, 460 (8th Cir.1935).

Judge Edmonds concluded that an assignment was intended between Plaintiff and Defendant for any recovery Plaintiff might receive from ADM and ADM Feeds. His conclusion was based on the language of the Agreement, which stated that the Defendant "will share" in the recovery. In Judge Edmonds's view, the definitive allocation of payments set out in the Settlement Agreement, along with the requirement that the Defendant Co–Op be paid "directly" from the Plaintiff's award clearly set forth an assignment because it showed Plaintiff's intention to give up control of the award to the Defendant. As to whether or not there was valuable consideration, Judge Edmonds found that there was after looking at the history behind the Settlement Agreement.

At the initial trial between the Defendant Co–Op and the Plaintiff, the Defendant Co–Op was going to present evidence which would have hurt Plaintiff's case against ADM and ADM Feeds. In Judge Edmonds's estimation, by agreeing to settle the matter before introducing that evidence, the Defendant Co–Op provided valuable consideration to Plaintiff. Judge Edmonds also noted that the terms of the Settlement Agreement allowed Plaintiff to reduce the amount of his

debt to Defendant from nearly $450,000 to $350,000 which also demonstrated valuable consideration.

Plaintiff appeals the Bankruptcy Court's decision on a variety of theories. First, Plaintiff claims that the Settlement Agreement was not an assignment because his attorney received the money and therefore Plaintiff at all times retained—through his attorney—control of those funds. Judge Edmonds, however, noted that the Settlement Agreement provided that the money deposited into Attorney Duncan's Account would not go to the Plaintiff until the Defendant Co–Op had collected its share. Therefore, in Judge Edmonds view, the Plaintiff did not have control of the funds.

Judge Edmonds noted that in the release document between the Plaintiff and ADM and ADM Feeds, a financial settlement was to be paid both to the Plaintiff and his wife. He noted that this document was prepared by insurance companies for ADM and ADM Feeds and he determined that the allocations of money were not dispositive as to the issue of whether an assignment was created by the Settlement Agreement between the Plaintiff and the Defendant Co–Op in light of the fact that the insurance companies' motivation was merely to release their clients from liability. Judge Edmonds concluded that the insurance companies were not certain about who the payments were to go to, nor how the payments were to be dispersed. For example, he noted that Sherry Wagner was not even a party to the original countersuit, but that the insurance company attorneys who drafted the ADM and ADM Feeds release document did not know this. Therefore, Judge Edmonds determined that the release document drafted by ADM and ADM Feeds's attorneys was not dispositive on the issue of whether the Settlement Agreement between the Plaintiff and Defendant Co–Op was an assignment.

■ In this Court, the Plaintiff began his analysis of the situation by maintaining that when determining whether an assignment of rights has occurred, a Court must look to the intention of the parties. *Broyles*, 305 N.W.2d at 721, *citing* 6A C.J.S. *Assignments*, Section 43. "(T)hat intention is derived not only from the instruments executed by them, if any, but from the surrounding circumstances." *Id.* Plaintiff claims that neither party intended an assignment when the Settlement Agreement was entered into. At the hearing in this Court, the Plaintiff noted, for example, that the Settlement Agreement does not contain the word "assignment."

The Defendant Co–Op, in resistance to the Plaintiff's appeal, argues that the parties clearly intended an assignment, and that the facts in this case clearly demonstrate that intention. Defendant pointed to the language of the Settlement Agreement which provided that if and when an award of money was tendered by ADM and ADM Feeds, the Plaintiff would not have access to any of the money until the Defendant had collected what was due it, and further that the Defendant Co–Op was to receive his share from the first $500,000 of that award.

The Court notes—as did Judge Edmonds in his decision—that the absence of the term "assignment" in the Settlement Agreement really has no bearing on whether an assignment was intended. *See, Fischer, supra. See, also, Petty v. Mut. Benefit Life Ins. Co.,* 235 Iowa 455, 15 N.W.2d 613, 618 (1944), *reh'g denied,* (Iowa 1944). Instead, the facts and circumstances surrounding the agreement are the relevant consideration factors. *Id.*

It is difficult—if not impossible—to envision the advantage of a Settlement Agreement to the Plaintiff if the Defendant Co–Op had not agreed to withhold damaging evidence from introduction at trial and to cut the size of its bill. It is quite conceivable that both the Plaintiff and the Defendant Co–Op recognized that the Plaintiff might win a large financial award from ADM and ADM Feeds without the damaging evidence from the Co–Op coming in. Since the Defendant did so-withhold (by a settlement) the damaging evidence and since the Plaintiffs agreed to have the Co–Op share in the award which was likely to be won from ADM and ADM Feeds without that damaging evidence, the Court is persuaded that there was an intention on the part of the Plaintiff to assign a portion of the proceeds from that litigation to the Defendant Co–Op. This is evidenced by

the structure of the Settlement Agreement. Plaintiff's attorney was to receive the money and place it in a trust account. The Plaintiff was to have no access to that money until the Defendant received the $350,000 plus interest. Only then could the Plaintiff touch the award money. Further, even if an award had not been received, the Plaintiff had agreed to pay the Defendants $350,000 plus interest. Therefore, the Court is persuaded that the Bankruptcy Court's finding of an assignment was not clearly erroneous.

■ Plaintiff further argues that an important consideration in deciding whether an assignment exists is evaluating whether the assignor retained control over the thing assigned. If so, then there is no assignment. *Jackson Nat'l Bank v. Christensen,* 146 Minn. 303, 178 N.W. 494 (1920). Plaintiff maintains that he controlled the course of the litigation regarding ADM and ADM Feeds after the Settlement Agreement was completed and that his attorney controlled the money, so there was no assignment. Judge Edmonds did not speak to the issue of who controlled the litigation, and appropriately so. Afterall, the thing assigned was not the litigation, itself, but the anticipated award from the litigation. Regarding the control of that award, Judge Edmonds ruled that although it was kept in Plaintiff's attorney's trust account, it was also made payable jointly to the Plaintiff and the Defendant Co–Op per the Settlement Agreement and was to be dispersed, initially, to the Defendant Co–Op. Accordingly, Judge Edmonds found no control by the Plaintiff and, hence an assignment.

*b. Whether the Settlement Agreement was an assignment or a promise to pay money in the future out of anticipated revenues?*

■ In this Court's view, the most pressing issue in this litigation is whether Plaintiff promised to pay money out of a non-existent future fund (which would nullify an assignment, *see In re Donaldson's Estate* and *State Central Sav. Bank v. Hemmy, supra*) or whether Plaintiff promised to pay the Defendant Co–Op out of a future judgment in a pending action (which, under *Broyles, supra,* would be evidence of an as-signment). Plaintiff notes, as did Judge Edmonds in his Order, that a promise to pay money in the future out of proceeds anticipated to be received does not constitute an assignment. *Restatement (Second) of Contracts,* Section 330. Paragraph 3 of Exhibit 1 reads: "... the Farmers Cooperative Elevator Company *will share* in such counterclaim ..." (emphasis added by plaintiff). Plaintiff asserts that this sentence clearly demonstrates an intention to an indefinite, therefore non-existent future fund. Judge Edmonds disagreed, maintaining that given the circumstances surrounding this case—the fact that without the Defendant Co–Op's damaging evidence, a favorable judgment was highly likely—this language demonstrated that the promise was for a future judgment in a pending action and therefore COULD be assigned under *Broyles,* 305 N.W.2d, at 721 (*citing, Weire v. City of Davenport,* 11 Iowa 49, 52–53 (1860)).

The Court is persuaded that this issue—the characterization of the anticipated jury award—is dispositive in this case. The question for consideration is whether a jury award which is anticipated, but not certain to occur, is a future judgment or a non-existent one. The Court devoted a considerable amount of time to this question at the hearing. The Court asked the Defendant Co–Op to elaborate on this issue. The Defendant's counsel responded as follows:

> It certainly shows he had, he seized an opportunity to limit his damages to the Co–Op that he would ultimately owe, and I believe it shows that the Co–Op recognized this lawsuit against ADM to be its best chance at ever collecting from Art Wagner.

The Plaintiff acknowledged that he expected or hoped he would receive an award from ADM. At the hearing, his Counsel characterized the Plaintiff's intentions as follows:

> He, I think that you're getting into that hairline distinction that if he transferred or promised to pay something that he expected or hoped he would get in the future, and again, he was hoping he would hit the jackpot, which he did. And, he was saying to the Co–Op, "If I do hit the jackpot, you know, I promise to pay you," which is not a transfer of anything, but a promise to pay.

As stated previously in this Order, the Court is bound by the Bankruptcy Court's determi-

nation unless it can be shown that the Bankruptcy Court's decision was clearly erroneous. It is clear to the Court that Plaintiff entered into the Settlement Agreement and promised to pay $350,000 to the Defendant Co–Op. It is also clear to the Court that the Plaintiff would probably have not been able to pay that amount if he did not win a favorable jury verdict. Hence, the promise to pay the Defendant Co–Op was premised upon an anticipated jury award he hoped would meet, if not exceed the $350,000 settlement amount. The Bankruptcy Court concluded that these facts amounted to an assignment. Based on the evidence in the record and the comments of counsel at the hearing in this matter, this Court cannot rule, as a matter of law, that the Bankruptcy Court was mistaken. Therefore, the Court is persuaded that Judge Edmonds's finding of an assignment based upon the promise to pay $350,000 from an anticipated jury award was not clearly erroneous.

IT IS THEREFORE ORDERED that the Bankruptcy Court's finding of an assignment on the Plaintiff's part was not clearly erroneous.

IT IS FURTHER ORDERED that the plaintiff/appellant's appeal from the Bankruptcy court's ruling is denied.