JANET PETTY, Appellee, v. MUTUAL BENEFIT LIFE INSURANCE COMPANY, Defendant; CATHERINE M. McCURDEY, Intervener, Appellant.

No. 46458.

456

SEPTEMBER 19, 1944.

OPINION MODIFIED AND REHEARING DENIED DECEMBER 14, 1944.

Henry H. Griffiths, of Des Moines, for appellant.

Tomasek & Vogel, of Grinnell, for appellee.

Henry & Henry, of Des Moines, for defendant.

MULRONEY, J.—Plaintiff, as the named beneficiary in a life-insurance policy upon the life of the deceased insured, sued the defendant insurance company for the proceeds of the policy. Intervener, a sister of the insured, asserted in her petition of intervention that insured had delivered the insurance policy to her and had ''* * * stated to her that they [insurance policies] were her property and he would see to changes of beneficiary. to her; that this amounted to an assignment thereof to her, and constituted a completed gift to her, and vested in her the property in such insurance contracts * * *.''

The intervener also set up waiver and estoppel against plaintiff's claim to the proceeds because of a property-settlement agreement plaintiff had executed with insured in connection with her divorce action against the insured. The intervener attached a copy of the policy to her petition of intervention. The defendant insurance company answered and admitted the execution of the policy and, on a decree of interpleader, paid the amount

due on the policy into court and is not a party to this appeal. Plaintiff answered the intervening petition and denied the assignment of the policy to intervener and denied intervener's asserted ownership of the policy or her rights to any of the proceeds of the policy which defendant had paid into court. Upon the issues thus joined between plaintiff and intervener trial in equity was had which resulted in a decree in favor of plaintiff from which intervener has appealed.

The insurance policy was on the life of William E. Miller, Jr., who died at Grinnell, Iowa, on May 16, 1943. At the time of his death he was a soldier and the day before his death his wife, the plaintiff here, obtained a divorce from him. Intervener testified by deposition as to a letter, Exhibit A, which she received from her brother while he was in military service. In this letter, dated April 19, 1943, the insured told his sister that his wife had written to him about her desire to get a divorce, and he further stated:

"I shall change my army and civilian insurance with you as beneficiary. If anything should happen to me. the army insurance pays about 55 dollars a month. There. is $3,500. of civilian insurance. I would like to have Emory Nourse paid in full for all moneys he advanced to Emory Miller, also Aunt Teddy. I don't think she sent much, but Emory Nourse, to quote Aunt Teddy, 'a large amount'. If the $3,500 is not enough, pay off with the monthly government check until paid in full. If Father needs help, you of course will be the one who does it, and that would help and should come first. I can't but think the $3,500 will more than recompense the Nourses. It is something I had intended to do when able. Aunt Teddy is almost rabid on the subject—perhaps scandalized is a better word. I do not blame her at all. We must not be indebted. I do not feel that way about Emory's debts to his friends, but feel a relative is taking an unfair advantage. They cannot refuse. * * *

I neglected to say what ready money (about 300) Janet agreed to send me—keeping bonds, personal effects etc. I would like to feel my insurance does some good. If Billy needs help to attain a real practical goal, you might feel like

helping him. At any rate the thing, after Nourses are paid, is yours to do as you see fit."

She also testified as to the contents of three other letters she received from her brother after April 19, 1943, which letters were destroyed by her. She stated that in these letters he "referred to his life insurance, and his desire that I receive it as his beneficiary * * *" and "In all the letters he spoke of all his insurance being my property, similar to what he said in Exhibit A of April 19th. In one of the letters he was very specific, describing two civilian insurance policies and the army insurance policy, and said he would write to each of the companies and the army to change the beneficiaries and have me beneficiary and turn the policies over to me." Later, on May 12th, intervener spent a day with the insured at the home of their aunt in Des Moines. At this time, she stated:

"We discussed the insurance fully * * *. Billy [insured] told me several times he planned to write and tell the insurance companies and government to tell them to put my name in as beneficiary. I·remember his exact words: 'I have the policies with me and will tend to that right away. I will get them off right away so I can turn them over to you.' We discussed practically everything we had written in our letters, including Exhibit A."

Intervener left Des Moines for Florida on the evening of May 12th, but she was called back on May 16th when notified of her brother's death. She again stayed at her aunt's home, and she stated:

"I found the life insurance papers during my second visit to Des Moines, in the desk * * * in the room in which I always stayed when I visited her."

She stated that there were two large envelopes with the policies and that she "took the policies" and left them with her aunt with instructions that they be turned over to Mr. Griffiths, her lawyer.

Intervener's aunt, Mrs. Nourse, testified that when the insured came to her house he asked her for a couple of large envelopes and he told her he wanted to use them to send his

insurance policy to the company to have his beneficiary changed. After his death she put the policies, that were in the desk in the room he occupied, in the envelope and mailed them to Mr. Griffiths.

The insurance policy which was in evidence named the plaintiff as beneficiary but provision was made therein for the insured to change the beneficiary without the consent of the named beneficiary ''at any time and from time to time while this policy * * * is in force and not assigned, upon return of the policy to the company at its office in Newark, New Jersey, with the insured's written request for the appropriate endorsement of the policy by the company.'' One clause in the policy provided: ''No assignment of this policy shall affect the company until it shall have received written notice thereof at its office in Newark, New Jersey.''

Upon this record the trial court held for the plaintiff, stating, ''that the only attempt to change said beneficiary was the expression in the letter as herein set out which the Court holds was ineffective to make an assignment or change of beneficiary * * *.''

I. The record of testimony for intervener is studded with numerous objections on the ground of incompetency under section 11257, Code of 1939, or the dead man statute. While plaintiff urges the objection in her brief in this court, she cites no authority and she does not support the proposition by any argument. The objection was not available to her. See Shuman v. Supreme Lodge K. of H., 110 Iowa 480, 81 N. W. 717; Crowell v. Northwestern Nat. L. Ins. Co., 140 Iowa 258, 118 N. W. 412; Shepherd v. Pacific Mut. L. Ins. Co., 230 Iowa 1304, 300 N. W. 556.

II. It will be noted that intervener did not plead, and does not argue, that there was a change of beneficiary in the policy. Her argument is that one who takes out a policy on his own life, reserving the right to change beneficiaries at will, may transfer the same by gift or assignment and that this evidence establishes such assignment or completed gift.

The named beneficiary in an insurance policy that provides the insured can change beneficiaries at will does not have a vested right in the policy or the insurance during the

lifetime of the assured. This is the rule established by the overwhelming weight of authority and it is the rule to which this court is committed. See Potter v. Northwestern Mut. L. Ins. Co., 216 Iowa 799, 804, 247 N. W. 669, 671, where the opinion reviews a number of decisions of other states and where, speaking through Justice Anderson, we stated:

"* * * where the right to change the beneficiary has been reserved in the policy, the beneficiary does not have a vested right or interest, and the insured has complete control and domination of the policy * * *."

III. Can the insured, where the policy reserves the right to change beneficiaries, assign the policy without the named beneficiaries' consent and without changing beneficiaries in the manner provided in the policy? Again the general rule, and the rule in this state, is that he can. A few authorities will be sufficient to show that this rule is firmly established.

In Potter v. Northwestern Mut. L. Ins. Co., supra, the policy was assigned as security for a loan. In the contest between the assignee and the named beneficiary we held for the former, stating:

"* * * that his reserved right to change the beneficiary includes the lesser right to effect the rights of the beneficiary by exercising or creating a lien on the policy; and thus he may do directly what he might do by changing the beneficiary to himself or his estate."

To the same effect is Andrew v. Bankers Life Co., 214 Iowa 573, 240 N. W. 215. While in the last two cited cases the named beneficiary joined in the assignment, we expressly held in the Potter case:

"* * * the fact that she [beneficiary] joined in the assignment would add nothing to the assignment * * * the assignment by the insured transferred to the assignee all rights of every kind under the policy of insurance to the extent, at least, of the indebtedness for which the policy as assigned became collateral."

The general rule is stated in an annotation in 135 A. L. R. 1040, at 1041, as follows:

"The great weight of authority is to the effect that where a life insurance policy reserves to the insured the right to change the beneficiary and is such that the insured has the right to assign the same, he may make such assignment without the consent of the beneficiary designated in the policy and without complying with the provisions of the policy prescribing the manner of changing the beneficiary, and upon the death of the insured, the assignee is entitled to the proceeds of the policy to the extent of his interest, as against the beneficiary."

Cases from many states, including the Potter case from Iowa, are there cited in full support of this general rule. Of course, the insured in this case was within this rule for the policy here "is such that the insured has the right to assign the same." As pointed out in the statement of fact, the insurer recognized the insured's right to assign. See, also, Antley v. New York L. Ins. Co., 139 S. C. 23, 137 S. E. 199, 60 A. L. R. 184, 191.

IV. The next question is whether the assignment is valid if the provision for filing the assignment with the company is not carried out. We conclude, in line with the general rule, that it is, because this provision for the filing of an assignment .. with the company is for the benefit of the insurer.

In Travelers' Ins. Co. v. Grant, 54 N. J. Eq. 208, 210, 33 A. 1060, 1061, the assignment was by letter from the insured to his wife wherein the insured stated the enclosed policy "is Entended for you alone." The policy had similar clauses with respect to filing assignments with the company. In fact, the clause in one policy provided no assignment would be valid unless sent to the company. In upholding the assignment, the court stated such clauses would have no effect on the assignment. In the course of the opinion the New Jersey Chancery Court pointed out that the insurer had voluntarily paid the money into court.

In Alkire v. King, 183 Okla. 187, 188, 80 P. 2d 309, 310, the court stated:

"There is no merit to the contention that the assignment is not valid because not accepted by the insurance companies. The companies are not involved here; the suit is between rival claimants to the funds which have already been received from

the companies. The rule is well established that the provision in the policy requiring approval or acceptance of the assignment is for the sole benefit of the company. See 37 C. J. 431, 432, and cases cited.''

In Opitz v. Karel, 118 Wis. 527, 533, 536, 95 N. W. 948, 950, 62 L. R. A. 982, 99 Am. St. Rep. 1004, where it was held the policy was given to insured's fiancée before his death, the court stated, with respect to a similar provision as to filing assignments with the company:

''The provision, at most, is for the benefit and protection of the company, which it may assert as against any claimant of the proceeds of the policy, other than the beneficiary named therein. * * *

''The company has paid the proceeds of the policy into the court for the lawful owner. By this act it has waived any objection it might have made to any transfer of the policy by the insured during his lifetime. Any objections to a transfer of this policy which this company might have made under this condition are not available to the defendant * * *.''

In Janesville State Bank v. Aetna Life Ins. Co., 200 Minn. 312, 314, 274 N. W. 232, 233, 111 A. L. R. 705, the insured merely left the policy, which named his wife as beneficiary, with a bank as security for a debt. The bank wrote to the insurer for forms for assigning the policy to it. The forms were sent to the bank but never executed. When the insured died the bank notified the insurer it had a claim against the proceeds. In spite of such notification the insurer paid the amount of the policy to the widow, and the bank sued the insurance company claiming the policy was pledged to it as security for a debt larger than the amount of the policy. The bank's judgment was affirmed. With respect to the clause providing that no assignment would be valid unless filed with the company, the court said:

''It has been held, and we think correctly, that where there is a prohibition in a policy forbidding the assignment of a policy of insurance without the consent of the insurer the policy may still be the subject of a valid pledge.'' (Citing cases.)

See, also, 111 A. L. R. 709, where the general rule is stated to be that the assignment is good though the provisions as to filing the same with the company are not complied with.

We have seen, therefore, that this policy could be assigned without the consent of the plaintiff and without complying with the provisions relative to filing the assignment with the company. Was there such an assignment present in this case? If there was, it is contained in the language of Exhibit A: "At any rate the thing, after Nourses are paid, is yours to do as you see fit." A fair interpretation of the whole exhibit indicates that "the thing" refers to the insurance proceeds from the Army insurance and "$3,500. of civilian insurance," including the policy in suit. We do not understand plaintiff argues otherwise. This writing would seem to fill all the requisites of an assignment of the proceeds of the policy to the intervener.

We said, in Andrew v. Bankers Life Ins. Co., supra, 214 Iowa 573, 578, 240 N. W. 215, 217:

"A policy of life insurance like the one in question is a chose in action, and under the statute of Iowa there can be no doubt of the assignability of same. Section 9451, Code, 1927. See Farmers' & Traders' Bank v. Johnson, 118 Iowa 282, 1. c. 286."

Section 9451, Code of 1927, cited in the above case, is still the law of Iowa. See section 9451, Code of 1939. This statute provides:

"Bonds, duebills, and all instruments by which the maker promises to pay another, without words of negotiability, a sum of money * * * are assignable by indorsement thereon, or by other writing, and the assignee shall have a right of action thereon in his own name, subject to any defense or counterclaim which the maker or debtor had against any assignor thereof before notice of such assignment."

Of course, the assignment here was not by endorsement. It was by Exhibit A or "other writing" within the provisions of the statute.

In considering whether or not there was a valid assignment

of the policy, we need not determine whether or not the policy was delivered to intervener. The policy was assigned as any other chose in action by the insured. As a general rule, it is sufficient if the written assignment of the chose in action is delivered to the assignee, without any delivery of other paper showing title to the chose in action. In Leedham v. Leedham, 218 Iowa 767, 769, 254. N. W. 61, 62, we said, with respect to the assignment of shares of stock:

"As between the parties, real shares of stock in a corporation may be transferred by a written assignment thereof, without delivery of such certificates representing the stock."

And again, in the same opinion:

"The delivery of the written assignment of a chose in action is a good delivery of the chose in action and is sufficient to support the gift. Jacobs v. Jolley, 29 Ind. App. 25, 62 N. E. 1028; Matson v. Abbey, 141 N. Y. 179, 36 N. E. 11; Luther v. Hunter, 7 N. D. 544, 75 N. W. 916; Bond v. Bunting, 78 Pa. 210; Cowen v. First National Bank of Brownsville, 94 Tex. 547, 63 S. W. 532, 64 S. W. 778."

See, also, 99 A. L. R. 1084, and cases cited supporting the rule therein stated that, "The delivery of a separate written instrument assigning or transferring corporate stock to the donee is sufficient to complete a gift thereof, without the actual manual delivery of the certificate of stock."

The assignment was the Exhibit A, where the insured said in writing that the insurance was intervener's to do with as she saw fit. His retaining possession of the policy for the purpose of further evidencing the gift, already accomplished by the written assignment, by changing the beneficiary to intervener, is consistent with the validity of the assignment. It cannot be said that the insured's possession of the policies after the assignment evidenced any intent contrary to the one he expressed when he sent the letter, Exhibit A.

In Northwestern Mut. L. Ins. Co. v. Wright, 153 Wis. 252, 259, 140 N. W. 1078, 1081, Ann. Cas. 1914D, 697, an assignment on the expressed consideration of love and affection was held valid though the policy assigned was not delivered to the assignee.

There the duplicate original assignment was delivered to the company, but we have seen that failure so to do will not invalidate the assignment. The following quotation from the last-cited case would seem quite pertinent here:

"Every essential to a transfer of title, according to the terms of the assignment, is shown. There was a good consideration, a manifest intent to transfer title and a good delivery, notwithstanding the evidence of the insurance obligation, the policy, remained in Mr. Wright's [insured's] possession."

The assignment, therefore, was complete by the delivery of the written assignment to the intervener without the delivery of the policy to her. The cases involving a gift of a policy of insurance accomplished by delivery of the policy to the donee are not in point. Nor can plaintiff argue that the assignment here was gratuitous and not supported by consideration. The policy, as stated, recognized the insured's absolute right to assign the policy, and the payment clause to the beneficiary is in fact conditioned upon there being no assignment by the insured at the time the policy matures by the insured's death. The insured had a right to assign the policy as security for a debt, but he also had the right to make a gratuitous assignment of the policy. Lack of consideration is not a defense to an assignment of the policy by the insured that can be asserted by a beneficiary who acquired no vested interest in the policy. See, also, Page v. Metropolitan L. Ins. Co., 98 Ark. 340, 343, 135 S. W. 911, 912, where it is stated:

"The insured had the same right to give as he had to transfer the policy for a valuable consideration."

And see Alkire v. King, supra, 183 Okla. 187, 188, 80 P. 2d 309, 311, where it is stated the insured "since he owned these policies * * * had the right to assign all interest in them * * * by way of gift * * *."

It follows from the above that we need but determine whether the language of Exhibit A is sufficient to constitute an assignment. No special form of words is necessary to effect an assignment in the absence of statutory provisions prescribing a particular mode or form. Any language, however

informal, if it shows the intention of the owner of the chose in action to transfer it, will be sufficient to vest the property in the assignee. 4 Am. Jur. 287, section 75. As we read Exhibit A we think the intent to vest the insurance in the intervener is clear. The intention to change the beneficiary to the intervener, the directions as to his wishes for the disposal of the insurance funds, the hope that his insurance will do some good, are all preliminary to the unequivocal words of transfer: "At any rate the thing [insurance], after Nourses are paid, is yours to do as you see fit."

In Alkire v. King, supra, the assignment was the following brief note delivered by the insured to his fiancée a few days before his death:

"Dear Grace: Just got back from Weatherford and the Doctor has me up in the air but I don't believe my condition is as serious as he thinks. Most of my insurance is made to my estate and all I have is yours because you are mine."

This note was held a sufficient assignment of the policies in an action at law against the administrator who had collected the insurance even though insured retained the policies.

This is an action in equity. The attending circumstance of the divorce can be considered by us. It presents a reason why the insured might want to assign his insurance. A court of equity seeks to do justice between the parties by penetrating to the very substance of the matter. As we have seen, the insured possessed absolute rights to assign this policy. No third person possessed any rights in the policy during his lifetime. It was the insured's to do with as he saw fit. We think, from all of the evidence in this case, the letter, the circumstances, and the declarations, that he saw fit to give the insurance to intervener and not his divorced wife. Under the law this could be accomplished by a gratuitous assignment. That it was accomplished in this manner is our conclusion. We find support for this conclusion in some of the earlier cases of this court where policies that did not provide for methods by which beneficiaries could be changed were involved. In these cases we held the will of the insured operated to effect the change of the beneficiary. See Townsend v. Fidelity & Casualty Co., 163

Iowa 713, 725, 144 N. W. 574, 579, L. R. A. 1915A, 109. In the last-cited case, this court, speaking through Justice Weaver, stated the rule that if the policy is silent with respect to the method and mode of changing the beneficiary " 'then the act on the part of assured that signifies an intention so to do will be binding.' " And the holding was that the words, "I give and bequeath * * * the proceeds" of insurance in the assured's will, operated to effect the change of beneficiary. Upon like reasoning we state that where the policy is silent as to the method and mode of assignment (and this policy was silent in this respect, for the so-called assignment clause was a company-protection clause), then the act on the part of the assured that signifies an intention to assign the policy will be binding. We arrive at a like conclusion when we hold that words in the letter to his sister that the insurance was hers to do with as she saw fit operated to effect the assignment.

We have examined the cases cited by plaintiff to support the trial court's ruling. Many of them involve membership certificates in fraternal or mutual-benefit societies where rules of transfer are governed by the articles, constitution, and by-laws of the society. We do not think they are in point. In Penn Mutual L. Ins. Co. v. Mulvaney, 221 Iowa 925, 265 N. W. 889, and Brown v. Grand Lodge, 80 Iowa 287, 45 N. W. 884, 20 Am. St. Rep. 420, so frequently mentioned in plaintiff's brief, there were valid changes of beneficiaries accomplished in the manner and mode provided in each policy. In these cases we held the new beneficiaries would prevail as against the old who were asserting vested rights by reason of gifts of the policies to them by assured. We cited these two cases in Shepherd v. Pacific Mut. L. Ins. Co., 230 Iowa 1304, 1317, 300 N. W. 556, 562, and stated that our holdings in the Penn Mutual and Brown cases were based upon a conclusion that "the subject matter of an insurance policy is not property that may be the subject of a gift." In the Penn Mutual opinion there are liberal quotations from the Brown opinion and the holding that the Brown case was "decisive." While we did not distinctly hold in the Penn Mutual case that the subject matter of an insurance policy is not property, we did put that construction on the decision by our language in the opinion in the Shepherd case. The

statement in the Brown case was correct under the facts of that case, but insofar as the holding here is in conflict with any statement in the Penn Mutual case to the effect that an insurance policy in an old-line company is not property the same is overruled. As previously pointed out, the insurance policy is property like any other chose in action. See the statement of Justice Holmes, of the Supreme Court of the United States, in Grigsby v. Russell, 222 U. S. 149, 156, 32 S. Ct. 58, 59, 56 L. Ed. 133, 36 L. R. A., N. S., 642, Ann. Cas. 1913B, 863:

"* * * life insurance has become in our days one of the best recognized forms of investment and self-compelled saving. So far as reasonable safety permits, it is desirable to give to life policies the ordinary characteristics of property."

See, also, Iona County Savings Bank v. McLean, 84 Mich. 625, 48 N. W. 159, and Womack v. Womack, 142 Tex. 299, 172 S. W. 2d 307.

It is our conclusion that the evidence shows a clear intention to transfer and assign the insurance to intervener and that this was accomplished in a manner that is not subject to any defense or objection that plaintiff can urge. Our conclusion renders unnecessary any determination of the question of estoppel by virtue of any stipulation in the divorce proceedings. The judgment of the trial court is reversed and the case is remanded for decree in favor of the intervener.—Reversed and remanded.

MANTZ, C. J., and HALE, SMITH, BLISS, GARFIELD, and WENNERSTRUM, JJ., concur.

OLIVER, J., dissents.

MILLER, J., takes no part.

OLIVER, J. (dissenting)—The letter should be considered as a whole. It first expresses the intention to change the beneficiary. None of the other language is inconsistent with this. I do not agree that it should be interpreted as an assignment of the policy.