**In re Arthur R. WAGNER and Sherry L. Wagner, Debtors.**

**Arthur R. WAGNER, Plaintiff,**

v.

**FARMERS COOPERATIVE ELEVATOR COMPANY, Defendant.**

**Bankruptcy No. X90–00310M.**
**Adv. No. X90–0061M.**

United States Bankruptcy Court,
N.D. Iowa.

Sept. 13, 1991.

Supplemental Memorandum of Decision and
Order July 2, 1992.

**432**

G.A. Cady, III, Hampton, Iowa, for plaintiff.

Lynn J. Wiese, Iowa Falls, Iowa, for defendant.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM L. EDMONDS, Bankruptcy Judge.

A debtor, in this chapter 11 case, seeks to recover $362,500.00 as a preferential payment to Farmers Cooperative Elevator Company (COOP). Trial took place on February 12, 1991 in Mason City, Iowa. This adversary proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(F). Prior to trial, the parties stipulated to a substantial number of facts.[1] Based on the stipulation, the court finds the following facts which are adopted from the parties' stipulation with minor, but insubstantial, editing.

### FINDINGS BASED ON THE STIPULATIONS OF THE PARTIES

#### (Stipulation of January 15, 1991)

On the 30th day of October, 1985, Farmers Cooperative Elevator Company brought suit against Arthur R. Wagner in the District Court of Franklin County, Law No. 1324–1085[,] upon an open account. The Coop claimed that Wagner owed $261,338.81 plus interest for feed and supplies purchased by Wagner from the Coop. A portion of the account balance claimed against Wagner by the Coop was for "wet corn gluten" cattle feed, which was purchased by Wagner from the Coop and manufactured by ADM Feed Corporation, a subsidiary of Archer–Daniels Midlands Company.

Wagner counterclaimed against the Farmers Coop and brought a third-party action against defendants Archer–Daniels Midlands Company and ADM Feed Corporation claiming that the "wet corn gluten" feed was defective and that the defective nature of the product injured Wagner's cattle.

Farmers Cooperative Elevator Company then filed a cross-claim against Archer–Daniel Midlands Company and ADM Feed Corporation for any damages that may be awarded to Wagner against the Coop as a result of the defective condition of the "wet corn gluten" feed.

In a related proceeding Wagner had been custom feeding livestock for W & G Cattle Company and he had fed the "wet corn gluten" feed to cattle owned by W & G Cattle Company. W & G Cattle Company filed suit against Archer–Dan-

---

1. A four-page stipulation of facts with numerous attachments was filed with the court on January 15, 1991. Two supplemental stipulations were admitted into evidence at trial as Exhibits 2 and 3.

iels Midland Company and ADM Feed Corporation in the Franklin County District Court on June 26, 1986, Law No. C1427–0686. Archer–Daniels Midland Company and ADM Feed Corporation then brought a third party action against Arthur R. Wagner claiming Wagner had improperly fed the livestock. These two cases were subsequently consolidated and tried together in April 1988.

During the trial Arthur R. Wagner, on April [29],[2] 1988, filed an Offer to Confess Judgment in favor of the Farmers Cooperative Elevator in the amount of $350,000. * * *

Thereafter, the Farmers Cooperative Elevator Company filed an Acceptance of the offer ... and pursuant to the Offer to Confess and the Acceptance thereof, judgment was entered against Arthur R. Wagner in favor of the Farmers Cooperative Elevator Company on April 29 in the amount of $350,000 plus statutory interest. * * *

On the 6th day of April, 1988, after trial, the jury found for Arthur R. Wagner in his claim against Archer–Daniel Midlands Company and ADM Feed Corporation and awarded actual damages of $133,170 and punitive damages in the amount of $850,000. The jury also awarded Wagner damages against the Farmers Cooperative Elevator in the amount of $15,400.... Wagner's judgment against ADM was appealed by ADM to the Iowa Supreme Court.

Pending appeal the case was settled pursuant to the terms of the Mutual Release [executed on November 21, 1989].

The Iowa Insurance Guaranty Fund issued check No. 014786 payable to the Duncan Law Firm Trust Account in the amount of $350,000 under date of October 19, 1989. This check was deposited into the Law Firm's trust account at Banker's Trust Company on October 23, 1989. A check from Shand, Morahan & Company, Inc. (General Accident Insurance Company of America) in the amount of $512,500 and the check from the Illi-

nois Guaranty Fund in the amount of $150,000 were deposited in the trust account of Duncan, Jones, Riley & Finley on November 21, 1989. On November 27, 1989 the Law Firm made the following distributions from its trust account: $362,500 to the Farmers Cooperative Elevator Company; $327,985.44 to Arthur and Sherry Wagner; $7888 to W & G Cattle Company; and the balance was paid to the Law Firm of Duncan, Jones, Riley & Finley for payment of Wagner's and W & G's attorney fees.

The plaintiff, Arthur R. Wagner, filed for relief under Chapter 11 of the Bankruptcy Code on February 23, 1990.

At all times material hereto, the Law Firm of Duncan, Jones, Riley & Finley was legal counsel for the plaintiff, Arthur R. Wagner.

*(Supplemental Stipulation, Exhibit 2)*

[T]he Iowa Insurance Guarantee Fund, Shand, Morahn (sic) and Company, Inc. (General Accident Insurance Company of America) and the Illinois Guarantee Fund were at all times material hereto either insurers for Archer Daniels Midland Company and/or ADM Feed Corporation, a subsidiary of Archer Daniels Midland Company, or guaranty funds acting on behalf of an insurer or receivorship, and that all moneys paid to the Duncan Law Firm Trust Account, the Farmers Cooperative Elevator Company and/or Arthur Wagner from said insurance companies of funds were paid pursuant to the terms of the Mutual Release.... (Exhibit E).

*(Supplemental Stipulation, Exhibit 3)*

[A]s of the date of the filing of the debtor's petition (2/23/90) the Hampton State Bank owned a secured claim against the debtor secured by first and paramount liens and security interests in the following non-exempt assets of the debtor, which assets have the following indicated fair market values:

---

**2.** Although the written stipulation stated that the Offer to Confess was filed on April 18, 1988, counsels' oral stipulation at trial was that the offer was executed by Arthur Wagner on April 18 but was filed with the district court on April 29. The findings reflect the latter date.

| Item | Fair Market Value |
|------|-------------------|
| Farm machinery and equipment (listed on attached Exhibit "1") | $232,030.00 |
| Livestock (listed on Exhibit "2") | $383,294.50 |
| Motor vehicles (listed on Exhibit "3") | $ 43,100.00 |
| Total | $658,424.50 |

[A]fter payment of the Hampton State Bank in full, the sum of $22,715.26 would be available to pay priority and unsecured creditors.

[O]n the date of the filing of the debtor's petition (2/23/90) the Commodity Credit Corporation owned a secured claim versus debtor secured by a first and paramount lien and security interest in the following assets of the debtor, which lien has the fair market value of $102,744.00:

| Item | Fair Market Value |
|------|-------------------|
| Crops | $137,522.76 |

[A]fter payment of the claim of the Commodity Credit Corporation in full, the sum of $34,778.76 would be available to pay priority and unsecured creditors.

[O]n the date of the filing of the debtor's petition (2/23/90), the debtor Arthur R. Wagner owned an undivided interest in real estate (160 acres described as NW¼, § 35–92–20 Frankliin (sic) County, Iowa), said 160 acres was subject to valid and enforceable mortgages to:

a. Farm Credit in the amount of $38,735.00

b. Glee and Thelma Wagner (contract sellers) in the amount of $37,342.00

c. Metropolitan Life Insurance Company in the amount of $147,923.00

[T]he mortgage debt upon the aforedescribed real estate is in excess of the fair market value of said parcel.

[O]n the date of the filing of the debtor's petition, Steven Recker owned a priority claim against the debtor for wages incurred during the month immediately prior to the date of the debtor's bankruptcy filing in the amount of $1,282.65. * * * [T]he said claim constitutes a priority claim in accordance with 11 U.S.C. § 507(a)(3)(A).

[A]t the date of the debtor's bankruptcy filing the debtors owned the following additional assets which would constitute property of the estate and which would be available for distribution to priority and unsecured creditors in a Chapter 7 proceeding in addition to the overplus listed in paragraphs 1 and 2 above:

| | |
|---|---|
| Cash in bank | $ 7,000.00 |
| Commodity account balance | $ 4,000.00 |
| Total | $11,000.00 |

[T]he total funds available for distribution to priority and unsecured creditors would be less than $69,000.00.

[O]n the date of the filing of the debtor's petition, the debtor Arthur R. Wagner owed valid and enforceable unsecured claims in the total amount of $519,186.53.

[A]ny claim of the Farmers Cooperative Elevator in a Chapter 7 proceeding would not be entitled to any priority treatment in accordance with 11 U.S.C. § 507.

## ADDITIONAL FINDINGS

Based upon the evidence, the court issues the following additional findings.

Arthur Wagner's Offer to Confess Judgment to Coop and Coop's acceptance (Exhibits D and E) apparently followed from a settlement "Agreement" entered into by the two parties sometime in early 1988. The agreement bore the caption of the state court consolidated actions and was introduced at the preference trial as Exhibit A. The agreement stated:

1. THAT for valuable and mutual considerations hereby exchanged, Arthur R. Wagner hereby admits a balance owing on his account of $350,000.00 and authorizes the above Court to enter judgment in this matter against him in favor of the Farmers Cooperative Elevator Co. in such amount.

2. THAT Farmers Cooperative Elevator Co. accepts such admission and upon entry by the above Court of judgment in its favor in such amount against Arthur

R. Wagner acknowledges the same to be in full and complete satisfaction of any and all sums owing it by the said Arthur R. Wagner upon those open accounts identified in its Petition as filed herein.

3. THAT it is further agreed by and between Farmers Cooperative Elevator Co. and Arthur R. Wagner that in the event said Arthur R. Wagner prevails in its counterclaim against Archer–Daniels–Midland Company, and/or ADM Feed Corporation, a subsidiary of Archer–Daniels–Midland Company as filed in the above action, that the Farmers Cooperative Elevator Co., will share in such counterclaim in the following manner:

(a) The first $500,000.00 of any recovery experienced or had by Arthur R. Wagner against Archer–Daniels–Midland Company and ADM Feed Corporation, a subsidiary of Archers–Daniels–Midland (sic) Company pursuant to its counterclaim as filed herein shall be applied first to any out of pocket costs experienced in the prosecution of its counterclaim by the said Arthur R. Wagner or his counsel of record;

(b) One-third of such recovery following payment of those amounts identified in sub-paragraph (a) above shall be paid to counsel of record of Arthur R. Wagner as attorney fees pursuant to their compensation agreement;

(c) The balance of such recovery, following payment of those items identified in sub-paragraphs (a) and (b) above, not to exceed $225,000.00, shall be paid directly to Farmers Cooperative Elevator Co. for application to its judgment and identified above.

(d) The balance shall be distributed to Arthur R. Wagner.

4. THAT any amounts received or awarded Arthur R. Wagner pursuant to its counterclaim in excess of $500,000.00 shall be distributed in the following manner:

(a) One-third shall be paid directly to counsel of record for Arthur R. Wagner pursuant to their compensation agreement.

(b) Following payment of those amounts identified in sub-paragraph (a) Arthur R. Wagner shall receive two-thirds of all other amounts recovered and the Farmers Cooperative Elevator Co. shall receive one-third of all other amounts recovered until such time as the Farmers Cooperative Elevator Co. has received an additional $125,000.00, giving it a combined recovery of $350,-000.00. At such time as Farmers Cooperative Elevator Co. has recovered $350,000.00, Arthur R. Wagner shall be entitled to one hundred percent (100%) of all additional proceeds.

Based on the jury verdicts, the court entered judgment: (1) that Arthur Wagner recover compensatory damages in the amount of $133,170.00 plus interest from Archer–Daniels–Midland Co. and ADM Feed Corp. Interest at the rate of ten per cent would begin to accrue as of December 24, 1985;

(2) that Wagner recover punitive damages in the amount of $850,000.00 from the same two defendants. Interest on the recovery would accrue at ten per cent per annum from April 15, 1988;

(3) that Wagner recover compensatory damages from Coop in the amount of $15,-400.00 plus interest at ten per cent from December 24, 1985;

(4) that Coop was to be indemnified by Archer–Daniels–Midland Co. and ADM Feed Corp. for payment of the $15,440.00 plus interest;

(5) that Coop recover from Archer–Daniels–Midland Co. and ADM Feed Corp. compensatory damages in the amount of $37,-983.00 plus interest at ten per cent from April 5, 1988;

(6) that W & G Cattle Co. recover from Archer–Daniels–Midland Co. and ADM Feed Corp. the sum of $12,000.00 plus interest at ten per cent from June 26, 1986; and

(7) that Wagner pay Archer–Daniels–Midland Co. and ADM Feed Corp. as contribution any amount in excess of $9,240.00 paid by the latter on the $12,000.00 foregoing judgment. (Exhibit "G").

The monies used to effectuate the settlement among all parties came from three sources. On October 19, 1989, Iowa Insurance Guaranty Fund issued a check payable to the Duncan Law Firm trust account in the amount of $350,000.00. Shand, Morahan & Company, Inc., on behalf of General Accident Insurance Co. of America, issued a check for $512,500.00 payable to Coop and the Wagners. There were perhaps others named on the check. Illinois Guaranty Fund issued a check in the amount of $150,000.00 payable to Coop and the Wagners and perhaps others.

At a meeting on November 21, 1989, at the Duncan Law Firm's offices, Michael Abildtrup, general manager of Coop, executed the mutual release form (Exhibit E) which had been drafted by the attorney for Archer–Daniels–Midland Co. and ADM Feed Corp. At the meeting and after the execution of the mutual release, Abildtrup endorsed the two checks which had been made jointly payable to Coop; he then gave them to attorney Duncan. The checks were deposited in Duncan's firm trust account on the same date and were disbursed by attorney Duncan on November 27, 1989.

In the Mutual Release, the Wagners acknowledged payment to them in the sum of $1,668,000.00, in consideration of which, they released Archer–Daniels–Midland Co., ADM Feed Corp. and numerous others from claims arising out of his purchase of the livestock feed. Coop acknowledged payment to it by Wagners of the sum of $362,500.00, in consideration of which Coop released Wagners, Archer–Daniels–Midland Co., ADM Feed Corp. and others from the feed claims. Wagners also agreed to "pay all claims demanded by Farmers Cooperative Elevator Company" and agreed to indemnify Archer–Daniels–Midland Co. and ADM Feed Corp. from any claims made against them by Farmers Coop.

## RULING ON OBJECTIONS TO INTRODUCTION OF DEFENDANT'S EXHIBITS C AND B

Coop offered two exhibits into evidence which drew objections from the plaintiff. These were exhibits C and B. Exhibit C is a letter dated October 2, 1989 to attorneys Randy Duncan (Wagner's attorney in the state court litigation) and Lynn Wiese (Coop's attorney) from Donald A. Wine, attorney for Archer–Daniels–Midland and ADM Corporation. The letter recited that it confirmed phone conversations wherein the parties had tentatively agreed to settle the case. The letter set out how $1,012,-500.00 would be divided to dispose of the litigation. The letter then stated:

> I have agreed that the checks will be made payable to Farmers Cooperative Elevator Company, Arthur Wagner and the Duncan Law Firm as Wagner's counsel. The check to the various parties will be made by the law firm.

The letter also stated that the settlement proposals were contingent upon the necessary inputs from the insurance companies or guaranty funds.

The second letter, dated October 6, 1989, also was from Wine to Wiese and Duncan. Wine wrote that he was sending an original and copies of the Mutual Release to Wiese, and he asked Wiese to forward the signed releases to Duncan. The second paragraph of the letter said:

> We have ordered the checks made payable to Arthur Wagner and his attorneys, Duncan, Jones, Riley & Finley and Farmers Cooperative Elevator Company. I will also send the checks to Lynn Wiese for endorsement and he can then forward them to Randy Duncan who will make the disbursements pursuant to my letter of October 2, 1989.

The court finds that each of these letters is relevant to the terms of the parties' settlement and to the issues of whether Duncan or Duncan's firm had agreed to act as escrow agent for the disbursement of the funds or whether a trust in the funds was created at the time of the deposits in Duncan's trust account. Wagner has objected to the admission of the letters on three grounds: (1) that they are not the best evidence of the agreement between the parties; (2) that they constitute inadmissible hearsay; and (3) that they violate the parole evidence rule in that they attempt to vary or explain the Mutual Re-

lease which is alleged by Wagner to be the written agreement among the parties.

█ The court now overrules the objections to the extent they are based on violations of the best evidence and parole evidence rules, but sustains the objections on the ground of hearsay. As to the parole evidence objection, the court does not consider the Mutual Release to be the integrated or entire agreement among the parties. It is merely a document which in part carries out the parties' settlement agreement. As to the best evidence objection, the court concludes that it is meritless because as to the issue of whether either an escrow agreement or a trust was established, the Mutual Release is not the best evidence as the Mutual Release does not speak to those issues.

█ The hearsay objection is sustained. The letters of October 2 and 6 are out-of-court written statements offered to prove the terms of the settlement agreement among Wagner, Coop, Archer–Daniels–Midland Co., ADM Corp. and W & G Cattle Co. The effect of the letters is to describe the prior oral agreements of the parties. While those oral agreements might not be hearsay because of their independent legal significance in the formation of a contract, the later description of the oral agreements is hearsay. The court, therefore, concludes that because Coop is offering the exhibits to prove the elements and obligations of the settlement agreement, the defendant's Exhibits B and C are excluded from evidence under Fed.R.Evid. 802.

## DISCUSSION

A trustee or debtor-in-possession may avoid preferential pre-petition transfers of property interests of the debtor. Among the elements of a preference is that the transfer of the property interest was made on or within 90 days before the date of the filing of the bankruptcy petition. 11 U.S.C. § 547(b)(4)(A). There is no question in this proceeding that a transfer was made by Wagner to Coop. The critical questions are, "What was the transfer?" and "When was it made?"

█ The dispute between the parties thus centers upon the legal effects of various steps in the parties' settlement of their state court dispute. Wagner contends that the preferential transfer took place on November 27, 1989 when Wagner's attorney, Randy Duncan, delivered a settlement check to Coop. If Wagner is correct, the transfer would have taken place within the preference period which began on November 25, 1989 and which ended upon the filing of the case on February 23, 1990.

Coop asserts that any transfer to Coop took place no later than November 21, 1989 when Coop endorsed insurance company and guaranty fund checks and delivered them to Duncan in accordance with the parties' agreement. Coop argues that the deposit of the money in Duncan's trust account, pursuant to the agreement, created either an escrow obligation in Duncan, or a resulting trust, an express trust or a constructive trust any of which irrevocably placed the money out of Wagner's control and thus constituted a transfer for purposes of preference law.

Despite counsels' arguments, I conclude that a transfer was perfected under 11 U.S.C. § 547 when Wagner executed and delivered the "Agreement" which assigned to Coop a share of any recovery which might be obtained from Archer–Daniels–Midland Co. and ADM Feed Corporation (defendant's Exhibit A).

█ To accomplish a valid assignment in Iowa, "there must be a perfected transaction between the parties, intended to vest in the assignee a present right in the thing assigned." *Carey v. Chase*, 187 Iowa 1239, 175 N.W. 60, 62 (1919). The evidence must show the intent of the parties to effect an assignment. No particular form of assignment is necessary. *Moore v. Lowrey*, 25 Iowa 336, 339 (1868). "No specific form of words is necessary to effect an assignment.... Any language, however informal, if it shows the intention of the owner of the chose in action to transfer it will be sufficient to vest the property in the assignee." *Petty v. Mutual Benefit Life Ins. Co.*, 235 Iowa 455, 15 N.W.2d 613, 618 (1944) *reh'g. denied* (1944).

■ The owner of a claim, even after the initiation of suit on the claim, may transfer his rights to any judgment he may recover. *Allen v. Newberry*, 8 Iowa 65, 70, 8 Coles 69 (1859). *See also, Conover v. Earl*, 26 Iowa 167 (1868). Furthermore, Iowa law recognizes partial assignments of claims for relief. *Welch v. Taylor*, 218 Iowa 209, 254 N.W. 299, 301 (1934); *Archibald v. Midwest Paper Stock Co.*, 158 N.W.2d 739, 742–743 (1968).

■ Having examined the Agreement (defendant's Exhibit A), I conclude that it is not merely an agreement to assign something in the future but was a present assignment of a partial interest in Wagner's recovery from the feed companies. The agreement states that Coop "will share", and although paragraph 3 states that it will do so "in the event" Wagner prevails in the counterclaim, the latter phrase does not lead me to conclude that the Agreement was one to assign in the future depending on the outcome of the litigation. Paragraphs 3(c) and 4(b) require direct payments to Coop out of any recovery. Of the first $500,000.00 of any recovery, Wagner would receive his share only after a distribution to Coop. Paragraph 3(d). Of any recovery in excess of $500,000.00, Wagner would only be "entitled" to proceeds after payment to Coop. Paragraph 4(b).

■ In determining when the transfer was made, the court must consider when it was perfected. 11 U.S.C. § 547(e)(2)(A)–(C). Transfers of personal property interest are perfected under § 547 of the Bankruptcy Code, "When a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." As an absolute assignment, the transfer would be perfected as against other creditors at the time of the agreement to assign. *Weire v. City of Davenport*, 11 Iowa 49, 52 (1860).

■ The payment to Coop of $350,000.00 in November, 1989 was in recognition of its property rights in the judgment against the feed companies. But what of the fact that the Coop received $362,500.00 from the final distribution? Was the additional $12,500.00 a preference? The settlement Agreement (defendant's Exhibit A) did place a $350,000.00 cap on the assignment. The amount of the judgment obtained against the feed companies, if fully affirmed on appeal, would have permitted Coop to recover to the full extent of that cap. By the settlement with the feed companies and despite the cap, Coop received $362,500.00 out of the insurance and guaranty fund proceeds. There is no evidence exactly how the latter figure was arrived at. Certainly Coop's judgment against Wagner had been drawing interest at the legal rate (10 per cent per annum pursuant to Iowa Code § 535.3) since April 29, 1988. Settlement with the feed companies, which would provide some payment of the judgment, was reached in the fall of 1989, clearly more than a year after the entry of Coop's judgment against Wagner. More than $35,000.00 in interest had accrued. Also, Coop was entitled to recover from Archer–Daniels–Midland and ADM Feed Corp. damages in the amount of $37,983.00. Pursuant to Coop's participation in the settlement of all claims, Coop had agreed to satisfy not only its claims against the feed companies but its judgment against Wagner for less than the amount Coop was entitled to from Wagner. But it was receiving out of insurance company payments $12,500.00 more than it was entitled to under the assignment from Wagner. There is insufficient evidence to determine whether this $12,500.00 came to Coop from Wagner to completely satisfy his obligation to Coop, or from the feed companies to satisfy Coop's claim against them. This insufficiency of evidence prevents the court from determining that transfer of those funds were preferential. The debtor has failed to satisfy his burden of proof in this regard. 11 U.S.C. § 547(g).

Because the court has concluded that in 1988 there was an absolute transfer by Wagner to Coop of an interest in Wagner's recovery against the feed companies, the court must also conclude that the debtor cannot establish a preference. Compare *United General Ins. Co. v. Roy Young, Inc. (In re Roy Young, Inc.)*, 66 B.R. 16, 19 (Bankr.W.D.La.1986). The court need not

reach the many issues related to the creation of an escrow obligation in Duncan or the establishment of a trust.

## CONCLUSIONS OF LAW

Wagner, in 1988, assigned to Coop an interest in any recovery or judgment which might be obtained against Archer–Daniels–Midland Co. and ADM Feed Corp. This transfer was not a preference under 11 U.S.C. § 547(b).

## ORDER

Judgment shall enter that the complaint of Arthur Wagner against Farmers Cooperative Elevator Co. is dismissed.

SO ORDERED.

## SUPPLEMENTAL MEMORANDUM OF DECISION AND ORDER

This Memorandum of Decision supplements the memorandum issued September 13, 1991. The latter sets out the court's findings of facts, conclusions of law and rationale for its decision in this adversary proceeding. The court determined that the written agreement (Exhibit A) executed by Arthur Wagner and the Farmers Cooperative Elevator Company (CO–OP) in April, 1988, constituted an assignment of a portion of Wagner's recovery from Archer–Daniels–Midland Company and ADM Feed Corporation. The court further concluded that the execution and delivery of the assignment was the effective date of transfer of Wagner's rights and that because such transfer took place before 90 days in advance of Wagner's filing of his bankruptcy petition, the transfer was not preferential. Judgment entered dismissing Wagner's complaint. On motion of the plaintiff, the judgment and record were reopened for the purpose of taking additional evidence on the issue of whether the agreement amounted to an assignment. The court now supplements its findings and conclusions and re-issues its order.

## FINDINGS OF FACT

Wagner and Co-op entered into the settlement agreement (AGREEMENT) during the trial of the consolidated legal actions pending in the Iowa District Court for Franklin County. The Agreement was executed and delivered on or before April 6, 1988, the date when the jury returned its verdict in favor of Wagner and against Archer–Daniels–Midland Company (ARCHER) and ADM Feed Corporation (ADM Feed). See page 117, Jury Verdict Forms attachment to Stipulation.[1]

On April 15, 1988, pursuant to the jury's verdict, the court entered judgments against Archer and ADM Feed in favor of Wagner and Co-op. Three days later, in apparent partial fulfillment of his settlement with Co-op, Wagner signed an offer to confess judgment in favor of Co-op. It was filed with the trial court on April 29. On the same day, Co-op filed its acceptance, and the court entered judgment. On April 30, Co-op reduced Wagner's account balance to zero.

Archer and ADM Feed appealed the judgments entered against them. While the appeals were pending, they reached settlements with Wagner which would also satisfy Co-op. The sources of the settlement monies were Archer's and ADM Feed's insurers or their successors. Three checks were issued to provide payment. The Iowa Insurance Guaranty Fund issued a check to Randy Duncan, Wagner's attorney, in the amount of $350,000.00. Duncan deposited it in his trust account on October 23, 1989. A check on behalf of General Insurance Company of America was issued payable jointly to Wagner and Co-op; it was in the amount of $512,500.00. A check in the amount of $150,000.00 was issued by the Illinois Guaranty Fund; it was payable jointly to Wagner and Co-op. Donald Wine, the attorney for Archer and ADM Feed, drafted a "Mutual Release" for execution by all parties. Wine and his clients learned during the trial that Wagner and Co-op had settled, but there is no evidence

---

1. The jury foreperson's signature is dated April 11, 1988. The parties to this adversary proceeding have stipulated that the jury returned its

verdict on April 6. The latter date is adopted for these findings, as the discrepancy is not material to the outcome of this case.

that it knew the specific details of the settlement or of the existence of the "Agreement" or its contents.

Wagner settled with Co-op for strategic reasons. Wagner's counsel learned that Co-op was prepared to present evidence in the case that would be damaging to Wagner's case. Wagner and his counsel decided to settle with Co-op in order to prevent the evidence from damaging the case against Archer and ADM Feed. Wagner was successful in this effort.

In his testimony, Wagner said that he viewed the settlement agreement with Co-op as an obligation to pay $350,000.00 but not necessarily out of any particular source. On further examination, he was asked whether, if he recovered from "ADM, the Co-op must be paid out of that recovery." He responded, "Yes." Michael Abildtrup, general manager of Co-op, believed that the settlement required payment to be made from the proceeds of the suit against "ADM." Both Wagner and Abildtrup were of the opinion that if there were no recovery against Archer and ADM Feed, Wagner would still owe Co-op $350,-000.00. Once settlement had been reached with Archer and ADM Feed, Co-op asked its attorney to structure the settlement so that funds would not pass through Wagner's hands, as Co-op feared other creditors might try to intercept the funds.

After the settlement agreement was executed, Co-op did not attempt to control, take over or assist in the litigation against Archer or ADM Feed. Settlement negotiations took place between Duncan and Wine. Nonetheless, once settlement was reached, Wine wanted all parties, including Co-op, to sign the settlement documents. He took that position because "[t]hey [Co-op] had a judgment against us for one thing and then we had been advised that they participated in the judgment [that Wagner had against Archer and ADM Feed]." (Wine deposition, p. 7, ll. 5–16.)

At least two of the insurance companies funding the settlement wanted all parties' names on the checks. There was an agreement among the parties that the Duncan firm's trust account would be used for the deposit and disbursement of the settlement monies. (*Id.*, p. 11, l. 2.) Michael Abildtrup endorsed the checks for Co-op, and they were deposited in Duncan's trust account on November 21, 1988. Co-op refused to deliver its signed mutual release to Duncan until it received its check from Duncan. The exchange was made on November 27, 1988.

The settlement agreement between Co-op and Wagner was negotiated by Duncan and Co-op's attorney, Lynn Wiese; the Agreement was prepared by Wiese. The original document was signed by the parties and their attorneys. When first examined, Duncan said he did not consider the agreement to have conveyed "a present interest in Wagner's claim against ADM or Archer–Daniels–Midland to the Co-op." He said the agreement was contingent on the size of the verdict and that Co-op would not be paid anything unless Wagner got a large enough verdict. (Duncan deposition, p. 10, ll. 13–21.) He also testified that he construed the agreement to mean that Co-op would receive its settlement money from Wagner, not from the insurance companies. (*Id.*, p. 21, ll. 8–17.) On cross examination, Duncan stated that he believed the settlement agreement to be a "viable contract between Arthur Wagner ... and Co-op." (*Id.*, p. 21, l. 21 to l. 22, l. 1). He corrected his earlier testimony that Co-op would only be paid if Wagner got a large enough verdict. He acknowledged that Co-op would be paid out of the first $500,000.00 regardless, and Co-op would be paid before Wagner. (*Id.* p. 22, l. 5 to p. 24, l. 10.)

## DISCUSSION

Wagner contends that the Agreement is not an assignment, as it is nothing more than a promise to pay Co-op out of a future fund. Wagner argues also that one cannot assign either tort claims or claims for punitive damages.

"A chose (or thing) in action is a right not reduced into possession or a right under a contract which, in case of nonperformance, can only be reduced to beneficial possession by an action or suit." *Arbie Mineral Feed Co., Inc. v. Farm Bureau*

*Mut. Ins. Co.*, 462 N.W.2d 677, 680 (Iowa 1990). A chose in action is assignable in Iowa. *Brenton Brothers v. Dorr*, 213 Iowa 725, 239 N.W. 808, 811 (1931). A cause of action for tort may be assigned. *Vimont v. Chicago & N.W. Ry. Co.*, 64 Iowa 513, 21 N.W. 9, 10 (1884); *United States v. Fleming*, 69 F.Supp. 252, 259 (N.D.Iowa 1946).

Assignability is not limited to claims or causes in action. One may assign rights to an existing judgment. *Broyles v. Iowa Depart. of Social Services*, 305 N.W.2d 718, 721 (Iowa 1981) *citing Edmonds v. Montgomery & Shaw*, 1 Iowa 143, 147 (1855). One may also assign rights to any judgment which may be recovered in a pending action. *Broyles*, 305 N.W.2d at 721, *citing Weire v. City of Davenport*, 11 Iowa 49, 52–53 (1860). An assignment of a future judgment may be made without giving the assignee a legal interest in the claim for relief. *Allen v. Newberry*, 8 Iowa 65, 70–71 (1859).

The issue before the court is whether the Agreement constituted an equitable assignment of a portion of Wagner's right to any judgment or recovery obtained from Archer or ADM Feed. In Iowa, an equitable assignment requires "an assignment, oral or written, of the fund, or some definite proportion thereof—such an agreement as that the assignor parts with all control thereover." *In re Donaldson's Estate*, 126 Iowa 174, 101 N.W. 870, 871 (1904). "Any words or transaction which show an intention on the one side to assign and the intention on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment." *Fischer v. Klink*, 234 Iowa 884, 14 N.W.2d 695, 698 (1944).

However, an agreement to pay out of a particular fund in the future when the fund comes into existence is not sufficient to constitute an equitable assignment. *In re Donaldson's Estate*, 126 Iowa 174, 101 N.W. 870, 871 (1904); *Christmas v. Russell*, 81 U.S. (14 Wall.) 69, 84, 20 L.Ed. 762 (1871); *B. Kuppenheimer & Co., Inc. v. Mornin*, 78 F.2d 261, 265 (8th Cir.1935) *cert. denied* 296 U.S. 615, 56 S.Ct. 135, 80

L.Ed. 436 (1935); *State Central Sav. Bank v. Hemmy*, 77 F.2d 458, 460 (8th Cir.1935). To create an equitable assignment, there must be an intention by the parties "to appropriate on the one hand and to receive on the other." *Id.* In determining whether the intent to transfer existed, the court may examine the entire transaction. *Id.*

Despite the able arguments of the plaintiff, the court still comes to the conclusion that the parties intended an assignment by Wagner to Co-op of a part of any recovery Wagner might obtain in his suit against Archer and ADM Feed. The parties' failure to use the term "assignment" is not fatal to such a conclusion as no form of words are necessary to constitute an assignment. *Petty v. Mut. Benefit Life Ins. Co.*, 235 Iowa 455, 15 N.W.2d 613, 618 (1944), *reh'g denied* (1944). The language of the Agreement provides that Co-op "will share" in any recovery. The Agreement set out definite proportions and dictated that Co-op would be paid its share "directly" with remaining funds being "distributed to Arthur R. Wagner." This evinces an intention by Wagner to give up control of the specified proportion of the future fund. Wagner received valuable consideration for the assignment. First, he removed Co-op as his adversary, eliminating the threat of the potentially damaging evidence which Co-op admittedly had to offer. Second, Wagner reduced his debt to Co-op to $350,000.00 from the nearly $450,000.00 claimed on the account. (Exhibit I.) Third, Wagner assured himself of receiving at least some portion of the first $500,000.00 of recovery.

Wagner contends that he never gave up control of the funds. This is not so. The Agreement, as has been said, provided for direct payment to Co-op with distribution to Wagner only after the required payments to Co-op had been made. After Wagner had settled with Archer and ADM Feed, it was orally agreed that the settlement monies would be paid to Duncan, who would deposit them in his trust account and make distribution to himself, Coop and Wagner. It was Co-op's intent that its

share would not pass through Wagner's hands. Although it might be argued that Duncan remained Wagner's attorney and under his direction, it cannot be gainsaid that Duncan was fully aware of the Agreement and the required distribution to Co-op. Indeed, he had signed it. (Exhibit E and Duncan deposition, p. 23, l. 21 to p. 24, l. 10.) The court cannot conclude that notwithstanding the written agreement between Wagner and Co-op and the oral agreement that Duncan would disburse the settlement funds, Duncan was free to disburse the funds in some other manner at Wagner's direction.

It can also be said, as Co-op has argued, that Duncan took the funds as escrow agent, obliged to disburse them in accordance with the oral agreement reached by Wagner, Co-op and Archer and ADM Feed. In this regard, the Iowa Supreme Court has said: "It sometimes happens that attorneys participate in the settlement of litigation by agreeing to receive and transfer funds in accordance with the settlement. An attorney who agrees to act as an escrow agent can of course be made to perform as one, even where opposing litigants are represented by separate counsel." *American State Bank v. Enabnit*, 471 N.W.2d 829, 833 (Iowa 1991). There is no question that Duncan had agreed to hold in trust and then disburse the Co-op's share. Such an agreement may be oral. *Id.* at 832.

In its previous memorandum and ruling, the court held that the assignment was effective upon its execution and delivery. (Memorandum, September 13, 1991, p. 15.) *See Weire*, 11 Iowa at 52. This would be when Co-op obtained equitable title to a portion of the potential recovery. Even, arguably, if Duncan remained under Wagner's control, when the funds were paid to Duncan, Co-op would have obtained legal title to its portion. *Kerr v. Kennedy*, 119 Iowa 239, 93 N.W. 353, 354–55 (1903). The money was deposited in Duncan's trust account on November 21, 1989. The first day of the preference period was not until November 25, 1989. The court concludes under the foregoing analysis that Co-op acquired an equitable assignment and then

legal title to the funds prior to that date, and that thus the transfer to the Co-op was not a preference under 11 U.S.C. § 547.

Wagner's other arguments do not detract from this conclusion. Wagner cites the case of *Weston v. Dowty*, 414 N.W.2d 165, 163 Mich.App. 238 (1987) as the most closely analogous to our matter. It, however, does not deal with the same issue. In *Weston*, the Michigan Court of Appeals held that an agreement to assign part of a recovery from a malpractice action was not an agreement to assign the claim or cause of action itself and that thus the agreement did not run afoul of Michigan's prohibition against assignment of legal malpractice actions. *Id.* at 167. The court did not determine that one could not assign a portion of the recovery.

■ Wagner argues that a claim for punitive damages cannot be assigned. For this proposition, he cites 25 C.J.S. *Damages* § 7. For one of its authorities, C.J.S. cites *Maryland Cas. Co. v. Brown*, 321 F.Supp. 309, 311 (N.D.Ga.1971). In the case, an insurance company, which had indemnified its insured, brought a claim against third parties for the damage done to the insured. The surety sued for actual and punitive damages. The court held that although the tort claim could be assigned, the claim for punitive damages could not be. The cited authority is distinguishable as it involved the assignment of a claim or cause of action, not the assignment of a recovery or judgment.

Because Wagner assigned his potential judgment or recovery and not his claim for relief, it is not significant that Wagner did not give up control of the litigation. Having assigned a portion of the recovery, not the claim, he remained the real party-in-interest.

■ Finally, the language of the mutual release does not persuade the court that the Agreement was not an assignment. Wagner points out that the release provides for payment to Wagners by the insurers and for payment to Co-op by Wagners. By the document, Co-op acknowledges payment from Wagners. Despite Wagner's

argument, the court does not conclude that the language of the release prevents a construction of the Agreement as an assignment. The release was drafted by the attorney for the insurance companies. The purpose of the document was to resolve all claims among all parties. The particulars of the agreement between Wagner and Co-op would not have been of interest to the insurers so long as both Co-op's and Wagner's claims were resolved. Indeed, the drafter also had Sherry Wagner acknowledge payment to her of settlement funds, yet there is no evidence that she was in any way involved in the litigation. Moreover, the release has Co-op acknowledging payment from her despite the fact that her name was not on the account (Exhibits H and I), and Co-op had not named her as a defendant in the state court action. The release drafted by the insurers' attorney was to resolve claims. The court does not, however, find it dispositive on the issue of whether Wagner assigned, by the Agreement, part of his recovery to Co-op.

For the foregoing reasons, the court concludes that attorney Duncan's disbursement of $362,500.00 to Farmers Cooperative Elevator on November 27, 1989 was not a preferential transfer of Arthur Wagner's property because Co-op, by virtue of its agreement with Wagner, had already obtained legal title to the funds on November 21, 1989, when the proceeds of the litigation settlement were deposited in Duncan's trust account. This legal title was an enlargement of the equitable title which Co-op obtained by virtue of the settlement agreement executed between Wagner and Co-op in April, 1988. Accordingly,

IT IS ORDERED that judgment shall enter that the complaint of Arthur R. Wagner against Farmers Cooperative Elevator Company is dismissed.

SO ORDERED.